# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DIVISION OF TEXAS
# BEAUMONT DIVISION

No. 1:09-CR-46

United States of America

v.

Benjamin Michael Kollar

                              Defendant

Report and Recommendation of United States Magistrate Judge
Re: Defendant's Motion to Withdraw Plea

This case is assigned to Hon. Marcia A. Crone who referred defendant's "Motion to Withdraw Plea" to the undersigned for consideration and a recommendation for disposition. An evidentiary hearing on the motion was convened on September 28, 2009.

## I. Factual Background

Defendant, an inmate in custody of the United States Bureau of Prisons (BOP), was indicted on April 15, 2009, and charged with assaulting an employee of the United States engaged in performance of official duties, a violation of 18 U.S.C. § 111(a)(1). The incident on which the indictment was based occurred at the Federal Correctional Complex in Beaumont, Texas, and involved several

other inmates. Nine additional inmates were indicted separately. Each was charged with committing the same offense.[1]

The first of these related case to reach trial involved the inmate defendant, Enrique Marquez Sanchez (Cause no. 1:09-cr-45). After a two-day jury trial in June, 2009, he was acquitted. Post-trial interviews disclosed that jurors concluded that the prosecution failed to prove its case beyond a reasonable doubt because (a) a surveillance video recording of the incident lacked sufficient clarity for jurors to decide independently whether Sanchez participated in the alleged assault; (b) the assaulted officer did not personally know Sanchez, and only identified him out of a photo array at a subsequent time; and (c) no evidence corroborated the victim's identification of the defendant.

After the Sanchez trial, the prosecutor reviewed the sufficiency of the evidence regarding the remaining cases arising from the same incident. He determined that four cases involved the same evidentiary problems. Accordingly, indictments against those defendants were dismissed.[2]

The prosecutor elected not to dismiss the indictment against the defendant in this action. His decision was based on the fact that the assaulted BOP officer personally knew the defendant, and the defendant was on that officer's caseload in that officer's unit." Mot. Hr'g. Tr. 46, Sept. 28, 2009. Therefore, this case

---

[1] Other cases arising out of the same incident were United States v. Rubio, 1:09cr12; United States v. Mata-Huerta, 1:09cr33; United States v. Gonzalez-Ornelas, 1:09cr34; United States v. Salazar-Montes, 1:09cr35; United States v. Enrique Marquez Sanchez, 1:09cr45; United States v. Jimenez, 1:09cr47; United States v. Espinoza-Aguirre, 1:09cr65; United States v. Carbajal, 1:09cr66; and United States v. Villasenor, 1:09cr75.

[2] Voluntary dismissals occurred in the following cases: Mata-Huerta, 1:09cr33, dismissed on 8/13/2009; Villasenor, 1:09cr75, dismissed on 8/10/2009; Espinoza-Aguirre, 1:09cr65, dismissed on 8/10/2009; Jimenez, 1:09cr47, dismissed on 7/2/2009.

proceeded toward a trial wherein defendant was represented by appointed counsel, Kevin Sekaly Cribbs, Esq.

Defendant and his attorney both agree that defendant initially asserted his innocence. When the prosecutor elected not to dismiss this case, defendant demanded a polygraph examination. An agreement was reached that an examination would be administered. If polygraph results showed no deception, the government would dismiss the indictment; otherwise, defendant would enter into a plea bargain agreement, plead guilty and stipulate to admissibility of the results of the examination at any trial. Based on this agreement, the prosecutor arranged for and provided at government expense a polygraph examination performed by a duly licensed examiner from the United States Department of Homeland Security.

The polygraph examiner's report is not before the court, but its results apparently were mixed.[3] In any event, the prosecutor did not consider the results as triggering his obligation to dismiss.

This required the defendant to decide whether to enter into a plea agreement or proceed to trial possibly burdened with his stipulation that polygraph results would be admissible. This issue came to a head on Monday, August 17th, a date coinciding with an amended pretrial order deadline for notifying the court of any plea agreement. Defendant decided to explore the possibility of entering into a last-minute plea agreement.

---

[3]     At the hearing on the instant motion, the defendant testified:

```
". . . the examiner had told me that I had
passed two tests, and that I had failed the
last one."
```

Mot. Hr'g. Tr. 29.

Defendant, his counsel and the prosecutor discussed terms of a proposed plea agreement in a teleconference that lasted two and a half hours, and consisted of at least two sessions. Ultimately, a deal was reached: the defendant would plead guilty pursuant to a stipulation – binding on the court – that a specific sentence of 37 months imprisonment is the appropriate disposition of the case. Such a sentence was the lowest sentence that could be imposed consistent with federal sentencing guidelines according to the prosecutor's and defense counsel's good faith efforts to figure out how the advisory guidelines applied to defendant's case.

During the plea negotiation teleconferences, defendant was in Lieutenant Yerina's office. The lieutenant and two other BOP officials, Counselor Herns and Officer Keithen, were present. The telephone conversations with defendant's counsel and the prosecutor were broadcast via speaker phone so that all present could here both sides of the conversations.

Lieutenant Yerina told defendant to hurry up because the teleconference was interfering with the business of his office. Officer Keithen told defendant that he should accept the plea offer of 37 months.

When the subject of stipulating for a specific sentence binding on the court was broached, defendant insisted that such agreement be put "in black and white." Mot. Hr'g. Tr. 31. There followed a break in the teleconference while Rule 11(c)(1)(C) language was added to the agreement. During the break, defendant returned to his cell.

Approximately 45 minutes later, Lieutenant Yerina and an unknown female officer came to the cell with the revised plea agreement, and said that he had to sign before 3:00 p.m.. It was already past 2:00 p.m. Defendant testified

that because of his existing solitary confinement it was hard to have a clear mind, and with three BOP people telling him what to do or not to do, and telling him to hurry up and hang up and sign before 3:00 p.m., he felt he had no choice but to proceed under a plea agreement which he signed that day.

Three days later, on August 20, 2009, defendant entered a guilty plea to Count I of the Indictment before the Honorable Marcia A. Crone. Judge Crone accepted his plea agreement (which bound the court to impose a sentence of only 37 months), conducted a guilty plea colloquy in full compliance with the requirements of Rule 11(b), Federal Rules of Criminal Procedure, and found defendant guilty as charged. Plea Hr'g. Tr. 18, Aug. 20, 2009.

## II. Motion to Withdraw Guilty Plea

Defendant seeks to withdraw his guilty plea pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure. Defendant asserts he is innocent of the charge and his plea of guilty was not knowingly and voluntarily entered. Further, at the hearing on his motion to withdraw, defendant added a third ground best described as a Due Process objection to what he perceives as disparate or vindictive treatment.

Before entering into plea discussions, before signing the plea agreement and before entering his guilty plea, defendant learned at the beginning of August, 2009, that three of the other defendants who were indicted as a result of the same incident had received dismissals of their indictments. Mot. Hr'g. Tr. 50-51. At the evidentiary hearing, defendant stated:

> "Also, last but not least, the same officer accused another inmate of the same thing, and that case was dismissed. Now I'm not judging mine towards his case, *but if it's the same officer, you know, why was his*

> *dismissed and mine wasn't when I've been from the beginning saying that I didn't hit this officer?"*

Mot. Hr'g. Tr. 35 (emphasis and punctuation added).

The United States opposes, arguing that defendant has not provided a fair and just reason to support withdrawal of his plea.

III. Discussion

*A.    Principles of Analysis*

Withdrawals of formal guilty pleas are governed by Rule 11(d), Federal Rules of Criminal Procedure. One's ability to withdraw a guilty plea depends on the status of the case. A succinct summary is provided by the governing circuit court of appeals as follows:

> "Federal Rule of Criminal Procedure 11(d) provides, "A defendant may withdraw a plea of guilty . . . *before the court accepts the plea*, for any reason or no reason ...." *. . .Once the court accepts the defendant's plea*, however, the defendant may withdraw that plea before sentencing only if . . . 'the defendant can show a fair and just reason for requesting the withdrawal.' . . . A defendant may not have a guilty plea set aside *after the court has imposed a sentence* except on direct appeal or collateral attack."

United States v. Arami, 536 F.3d 479, 482 (5th Cir. 2008) (italics added).

Here, defendant's motion to withdraw his plea was submitted *after* the court accepted it but *before* imposition of sentence. Hence, the district court has authority to act, but defendant has no absolute right to relief. United States v. Puckett, 505 F.3d 377, 382 (5th Cir. 2007) (citing United States v. Powell, 354 F.3d 362, 370 (5th Cir. 2003)). Rather, the court in its discretion may allow him to withdraw his plea only if he shows a *fair and just reason* for requesting

withdrawal. Rule 11(d)(2)(B); Powell, 354 F.3d at 370. "The burden of establishing a fair and just reason for withdrawing a guilty plea remains at all times on the defendant." United States v. Badger, 925 F.2d 101, 104 (5th Cir. 1991) (citing United States v. Hurtado, 846 F.2d 995, 997 (5th Cir. 1988)).

The fair-and-just rationale for allowing defendants to withdraw already-accepted guilty pleas is to permit them to undo pleas that were unknowingly made at the time they were entered. United States v. Carr, 740 F.2d 339, 345 (5th Cir. 1984). The purpose is not to allow defendants to make tactical decisions to enter a plea and obtain withdrawals later if they subsequently conclude that they made bad choices in pleading guilty. Id.; Everett v. United States, 336 F.2d 979, 984 (D.C. Cir. 1964).

The Fifth Circuit considers seven factors as helpful guidelines relevant to determining when a defendant meets the "fair and just reason" standard. They are whether: (1) defendant asserted his innocence; (2) withdrawal would prejudice the government; (3) defendant delayed in filing his withdrawal motion; (4) withdrawal would inconvenience the court; (5) adequate assistance of counsel was available; (6) defendant's plea was knowing and voluntary; and (7) withdrawal would waste judicial resources. Id. (citing United States v. Grant, 117 F.3d 788, 789 (5th Cir. 1997)). While all factors are relevant, a court entertaining a motion to withdraw is not required to make specific findings as to each of the seven Carr factors. United States v. Badger, 925 F.2d 101, 104 (5th Cir. 1991). Accordingly, a court "need not parse each Carr factor but can instead look to the totality of the circumstances" in denying a motion to withdraw a guilty plea. See United States v. McElhaney, 469 F.3d 382, 385 (5th Cir. 2007); Badger, 925 F.2d at 104.

In addition, no single factor is dispositive. United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001). For example, an asserted-legal-innocence claim, standing alone, is "far from being sufficient" to require a court to grant a motion to withdraw. Carr, 740 F.2d at 344; United States v. Barker, 514 F.2d 208, 221 (D.C. Cir.), cert. denied, 421 U.S. 1013 (1975). Similarly, showing lack of prejudice to the government is, by itself, insufficient to mandate permission to withdraw a plea. Carr, 740 F.2d at 345; United States v. Rasmussen, 642 F.2d 165, 168 n.6. Instead, some additional and credible reason must be presented, and the court must consider the *totality of the circumstances* when applying the guideline factors in light of all relevant evidence. Id. (citing United States v. Carr, 740 F.2d 339, 344 (5th Cir. 1984)).

*B.     Application*

   1.     Asserted Innocence (*Carr* Factor 1)

Defendant now asserts his innocence, and unchallenged testimony at the motion hearing suggests that he claimed innocence at the outset of the case, and continued to do so during initial stages of the plea bargaining process. Counterbalancing that, he also (a) conceded his guilt in the written plea agreement (Docket No. 23, ¶9), (b) executed a document titled "Factual Basis and Stipulation" wherein he agreed "without reservation" that he "struck Officer G. Perkins in the face" on October 22, 2008, at the Federal Correctional Complex in Beaumont, Texas, while officer Perkins was performing official duties (Docket No. 22, ¶ 5(b)), (c) acknowledged under oath that he agreed "in every respect" with the government's summary of the facts constituting proof of the commission of the offense as contained in the in that "Factual Basis and Stipulation" (Plea Hr'g. Tr. 16), (d) testified that he was involved in a fight that included physical contact with Officer Perkins, knowing that Perkins was performing his official

duties (Plea Hr'g. Tr. 16), and (e) testified that he was pleading guilty because he was in fact guilty (Plea Hr'g. Tr. 17).

Given these solemn declarations, it is impossible to weigh this factor heavily in defendant's favor, if at all. "Reviewing courts give great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283084 (5th Cir. 2002). And, in any event, this factor alone cannot justify setting aside the guilty plea. Otherwise, "the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right." Carr at 344, citing United States v. Barker, 514 F.2d 208, 221 (D.C. 1975).

2. Prejudice, Delay, Inconvenience, Waste (*Carr* Factors 2-4, 7)

While each of these factors is analytically distinct, all relate to how difficult, troublesome or awkward it would be to reverse course and proceed to trial. Defendant seeks to carry his burden by asserting that each factor suggests such minimal impact that the court should remain open to his request to withdraw his guilty plea. As discussed below, there is some merit to defendant's arguments.

a. *Prejudice to Prosecution*

The only suggestion of prejudice argued by the government is that it incurred time and expense in agreeing to, arranging and paying for an unnecessary polygraph examination. While true, such examination apparently did not prejudice the government because it revealed that defendant was untruthful in at least one instance, and defendant agreed in advance that adverse findings would be admissible against him at trial. Realistically, the

government has not been prejudiced, but arguably enhanced in its ability to prosecute the case.

### b. *Delay in Filing Motion*

Defendant's motion was not filed until 21 days after he entered the plea – similar to the 22-day delay involved in Carr and which triggered a "more demanding standard" than if the motion were filed "only a day or so after the plea was entered."[4] Evidence adduced at the hearing, however, proved that only 4 days after the plea colloquy, defendant wrote counsel, stating his belief that he had been pressured and rushed into the plea without taking time to review his case better (specifically the video recording and polygraph results), and further stating that he "honestly" felt that "there's a chance to prove I did not assault . . .Perkins." Mot. Hr'g. Ex. 2. Accordingly, there was no excessive delay by defendant in seeking to withdraw his plea, and this factor should not bar further consideration of defendant's motion.

### c. *Inconvenience to the Court*

Permitting defendant to withdraw his plea would involve some inconvenience for the court. Because this is a criminal case, it would take priority over civil cases awaiting trial. Rescheduling the case would disrupt the court's existing schedule established with the understanding that no trial will be required in this case. And, based on the length of trial in the similar Sanchez case, the court would need to carve out two or three days from an already-full trial schedule. Realistically, however, the court is not so overburdened, and this case is not so complex that the court cannot provide timely trials to both plaintiff

---

[4] Carr, 740 F.2d at 346 (citing Barker, 514 F.2d at 222).

and awaiting civil litigants. Again, this factor, while weighing against defendant, is not such that the relief requested should be summarily denied.

### d. Waste of Judicial Resources

Granting defendant's motion would involve a waste of judicial resources in the sense that the court's time and effort in scheduling and receiving the guilty plea, and in considering an atypical plea agreement would all be for naught. Further, granting the motion would result in expending additional judicial resources for a short trial, time that would otherwise be available to protect "the rights of other accused persons awaiting trial, whose cases may lose . . . their position on the calendar." Carr, 740 F. 2d at 346 (quoting Everett, 336 F.2d at 984). Nevertheless, as with the preceding factor, the court is not so overburdened, and this case is not so complex that the court or other litigants will be significantly disadvantaged by granting defendant's motion.

### e. Conclusion

Considered individually, none of the Carr factors 2-4 or 7 strongly argues *against* allowing defendant to withdraw his plea. But none argues in *favor* either. And, when all these factors are considered collectively, they tilt against the defendant. But if they were factored as neutral or even as slightly favoring the defendant, this is a classic case where something more, what Carr referred to as a more compelling "credible reason,"[5] is needed to justify withdrawal of a formally-entered guilty plea.

---

[5] Carr, 740 F.2d at 344 (quoting Rasmussen, 642 F.2d at 168, n.6).

3. Adequate Assistance of Counsel (*Carr* Factor 5)

Defendant neither claims nor does he present evidence suggesting that he received ineffective assistance of counsel. In his signed plea agreement, he states that he reviewed all aspects of the plea agreement with his lawyer and believes that he was provided satisfactory explanations. Docket No. 23, ¶ 9. At the plea hearing, he testified under oath that he received adequate assistance of counsel. Plea Hr'g. Tr. 4.

Consequently, this is an instance in which analysis and specific findings on this factor might be omitted. But, because his counsel has moved to withdraw, and because such motion was filed at defendant's request,[6] careful consideration of this factor is prudent.

Defendant's counsel, Ms. Sekaly-Cribbs, is a long-tenured member of the court's Criminal Justice Act panel of lawyers. She applied for admission, was approved by the panel selection committee as competent to represent indigent criminal defendants in this district, and appears regularly in such capacity.

Nothing of record suggests anything other than that Ms. Sekaly-Cribbs represented defendant ably and conscientiously in this matter. She had at least three "contact visits" with defendant at the prison where he is housed. Mot. Hr'g. Tr. 19. She commendably attended and audited the entire Sanchez trial. Mot. Hr'g. Tr. 19. In so doing, she discovered the prosecution's strategy and evidence, and also was able to assess effectiveness of the prosecutor and the prosecution's witnesses. Further, she learned how the court would select and charge the jury.

---

[6] See Mot. Hr'g. Ex.1.

Ms. Sekaly-Cribbs disclosed to defendant the government's evidence against him. Mot. Hr'g. Tr. 33. She reviewed the video record of the incident with the defendant, and explained how lack of clarity of the video, alone, would not necessarily require an acquittal. Mot. Hr'g. Tr. 50. She persuaded defendant's demand for a polygraph examination (Mot. Hr'g. Tr. 17), and extracted an agreement from the prosecutor to dismiss the indictment if the examination favored defendant. Once defendant elected to proceed with a plea bargain, she negotiated a plea agreement containing a stipulation for a sentence at the very bottom of the advisory sentencing guideline range, and bargained for language that would bind the court to impose such a sentence. Finally, at the plea hearing, defendant testified that (a) he had discussed the facts of this case, the pending charges and possible defenses with his lawyer (Plea Hr'g. Tr. 3), (b) he was satisfied that his attorney had fully considered those factors (Plea Hr'g. Tr. 4.), and (c) he was fully satisfied with his counsel's representation and advice. Id.

Ms. Sekaly-Cribbs performed as a competent defense counsel, and she advised defendant appropriately. Defendant was well-represented throughout the proceedings. Thus, there is no basis for permitting defendant to withdraw his plea for lack of adequate assistance of counsel.

4. Knowing and Voluntary Plea (*Carr* Factor 6)

   a. *Knowing Plea*

The written plea agreement which defendant signed specifically enumerated all of the potential consequences of pleading guilty, and contains a representation by defendant that he reviewed all aspects of the plea agreement

with his lawyer and was provided satisfactory explanations.  Docket No. 23, ¶¶ 3 and 9.

In addition, at the plea hearing, Judge Crone determined that defendant was mentally competent (Plea Hr'g. Tr. 8-9), she explained the elements of the offense with which defendant was charged, and advised defendant that such elements would have to be proved beyond a reasonable doubt.  Plea Hr'g. Tr. 5.  Defendant stated that he understood.  Id.  Judge Crone further advised the defendant of the potential penalties that could be imposed, including collateral consequences of being convicted of a felony, and explained that the actual sentence would be determined in part by advisory sentencing guidelines.  Plea Hr'g. Tr. 5 - 8.  Defendant testified that he and his attorney discussed how the guidelines might apply in his case.  Plea Hr'g. Tr. 7.  Judge Crone carefully advised defendant of his right to a trial, and explained that by pleading guilty, defendant would waive those rights, and defendant replied that he understood.  Plea Hr'g. Tr. 9 - 10.

Judge Crone determined that defendant had read and discussed the written plea agreement with his lawyer before he signed it, that defendant understood its terms, and that no other or different promises had been made.  Plea Hr'g. Tr. 10.  Judge Crone required the prosecutor to summarize the plea agreement, and following that, defendant stated that he understood and agreed with the prosecutor's summary, and that he still wished to accept the terms of the agreement.  Plea Hr'g. Tr. 13.  Finally, Judge Crone explained that by entering a plea of guilty, and by entering the plea agreement, defendant was waiving his right to appeal his conviction and sentence on all grounds except for those specifically enumerated in the plea agreement.  Plea Hr'g. Tr. 14.

There is no claim, and the above evidence provides no hint or suggestion that defendant's guilty plea was not entered knowingly.

      b.      *Voluntary Plea*

The most appealing aspect of defendant's motion relates to voluntariness of his plea. As noted earlier, final plea negotiations did not occur until the day that the parties were required to notify the court of any plea agreement. Defendant testified that he had difficulty thinking clearly due to his long-term status in solitary confinement. His attorney was not physically present, but three BOP employees were, and were privy to all conversation. Defendant asserts that these BOP employees were annoyed by the interruption of their regular duties, pressed him to sign the agreement, and represented that the 37 months stipulated sentence was a good deal that ought to be accepted. Defendant felt that he rushed into a plea agreement without fully exploring the significance of the non-definitive video tape and the mixed results of the polygraph examination. All of these factors combined – especially outside influence from BOP employees – raise at least a colorable claim that defendant's plea was to some extent coerced.

Upon reflection, however, the claim of an involuntary plea has not been proven. First, and notwithstanding defendant's subjective statements that he was not thinking clearly and felt coerced, the objective evidence shows that even during last-minute plea negotiations, defendant was able to think clearly enough and felt free to resist until a Rule 11(c)(1)(C) agreement was reduced to "black and white" writing. Second, defendant executed a plea agreement stating that he would plead guilty voluntarily. Docket No. 23, ¶ 7. Third, no BOP employees were present or exerting pressure when defendant entered his plea three days later.

At that time, Judge Crone informed defendant that he could consult privately with his attorney at any time if he needed further explanation (Plea Hr'g. Tr. 3), and also informed defendant that he could change his plea of guilty to not guilty at any time during the proceedings. Plea Hr'g. Tr. 4. Defendant voiced no objection and proceeded with his plea. Further, he expressly stated that his plea was voluntary and was not the result of force, threats or promises by anyone. Plea Hr'g. Tr. 8. These in-court declarations under oath carry a strong presumption of verity that opportunistic, self-serving and largely conclusional assertions lack. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001).

For these reasons, there is insufficient reason for the court to set aside defendant's guilty plea on the ground that it was not voluntarily made.

C.   *Conclusion*

Evaluation of all of the Carr factors shows that none strongly supports granting defendant's motion to withdraw his guilty plea. As such, defendant fails to demonstrate a fair and just reason for requesting the withdrawal. The evidence suggests, instead, that this is an instance where defendant made a tactical decision to enter a plea (with a binding stipulation for a sentence at the lowest end of the sentencing guidelines), and then sought to obtain a withdrawal later after concluding that he made a bad choice in pleading guilty.[7]

---

[7] The evidence of defendant's attempt to make a new tactical decision to ask for a trial is contained in his letter to counsel dated four days after his guilty plea. Therein, defendant states at the outset:
> "I've learned today that two more cases have been dropped. . . .I feel pressured to cop out to the plea due to my background."

Mot. Hr'g. Ex. 2. Defendant knew the outcome of the Sanchez trial before he entered his plea. He also knew before pleading guilty that indictments against
(continued...)

Defendant's impression that he was being singled out made him wonder whether by simply holding out, his case might also be dismissed.[8]  Such second-guessing is understandable, but it does not correspond to an involuntary and unknowing plea.  As noted earlier, the rationale behind the "fair and just reason" standard is to permit defendants to undo pleas that were unknowingly or involuntarily made at the time they were entered, not to make new tactical decisions.  Under a totality-of-the-circumstances analysis, there is no basis for the court to conclude that the rationale for permitting defendants to undo pleas is satisfied here.

IV. Recommendation

Defendant's motion to withdraw his guilty plea should be denied.

V. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 1(a), 6(b), and 72(b).

---

[7](...continued)
three other inmates involved in the fracas had been dismissed.  But when he learned after pleading guilty that two additional defendants had been dismissed, his prudence of having entered into a plea agreement and pleading guilty became less obvious.

[8]  Defendant is mistaken when thinking that only he ultimately was prosecuted after the Sanchez acquittal.  According to the Clerk's docket, defendant Rubio (1:09cr12) pleaded guilty to another offense arising out of the same incident and was sentenced on 8/27/2009; defendant Gonzalez-Ornelas (1:09cr34) pleaded guilty and was sentenced on July 15, 2009; defendants Salazar-Montes (1:09cr35) and Carbajal (1:09cr66) pleaded guilty and are currently awaiting sentencing.  Therefore, six of the ten originally-indicted defendants were prosecuted.

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, see Rodriguez v. Bowen, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, see Douglas v. United Servs. Auto. Ass'n., 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

SIGNED this  20  day of October, 2009.

_____
Earl S. Hines
United States Magistrate Judge